Bill LAWSON, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 81–5423.

United States Court of Appeals, Sixth Circuit.

Argued May 25, 1982.

Decided Sept. 16, 1982.

John T. McFerrin (argued), Appalachian Defense Fund of Kentucky, Jeffrey A. Armstrong, Barbourville, Ky., for plaintiff-appellant.

Louis De Falaise, U. S. Atty., Miles H. Franklin, Asst. U. S. Atty., Patrick H. Molloy, Lexington, Ky., Holly A. Grimes, Asst. Regional Atty. (argued), Dept. of Health and Human Services, Atlanta, Ga., for defendant-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and TAYLOR,* District Judge.

CONTIE, Circuit Judge.

Appellant appeals the denial of benefits pursuant to the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* Part B of this Act establishes a program to provide benefits to coal miners filing claims on or before December 31, 1973, who are totally disabled due to pneumoconiosis. The Act authorizes the Secretary of HEW to promulgate regulations establishing specific standards and presumptions for determining eligibility for Black Lung benefits. 30 U.S.C. § 921.

The Interim Regulations in effect when appellant filed for benefits in 1971 provide:

With respect to a miner who files a claim for benefits before July 1, 1973 . . . ., such miner will be presumed to be totally disabled due to pneumoconiosis . . ., if: (1) One of the following medical requirements is met:

(i) A chest roetgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428).

20 CFR § 410.490(b). The presumption thus created may be rebutted by evidence that the claimant is doing or is capable of doing work comparable to his former work. 20 C.F.R. § 410.490(c).

At a hearing before the Administrative Law Judge (ALJ), claimant introduced an X-ray taken in 1971, which had been originally read as negative for pneumoconiosis and reread as negative by certified B readers.[1] He also introduced reports of two X-rays taken in 1974 and read as positive for pneumoconiosis by an internist specializing in pulmonary disease. The ALJ sent one 1974 X-ray to a certified A reader, who also found it positive for pneumoconiosis.

The ALJ, relying largely on the report of the A reader, found that chest X-rays established that the claimant did have pneumoconiosis, that consequently a presumption of black lung disability had arisen, and that no evidence of ability to perform comparable or gainful work had been introduced to rebut the presumption. Accordingly, the ALJ found the claimant entitled to benefits.

The Appeals Council decided to review the ALJ's decision on its own motion and sent the X-ray which the A Reader had interpreted and all other X-rays (including a 1971 and 1973 X-ray not introduced into evidence at the hearing) to a certified B reader. The B reader found the X-rays either unreadable or negative for pneumoconiosis. Specifically, he found the 1974 X-ray that formed much of the basis for the ALJ's opinion negative. The Appeals Council reversed the decision of the ALJ, holding that "the preponderance of the medical and other relevant evidence did not establish, prior to July 1, 1973, the presence of pneumoconiosis or any totally disabling chronic respiratory disease." The Secretary adopted the action of the Appeals Council; the district court affirmed.

---

* The Honorable Robert L. Taylor, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. Both A and B readers are certified by the Public Health Service. B readers have greater qualifications.

The question before us is whether the Appeals Council erred in ordering the X-rays reread.

■ Once a statutory presumption of the existence of pneumoconiosis has arisen, it cannot be rebutted by negative X-ray findings. *Moore v. Califano,* 633 F.2d 727 (6th Cir. 1980); *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976). Accordingly, a negative reading of a given X-ray cannot rebut the § 410.490(b)(1)(i) presumption created by a prior positive reading of the same X-ray. *Dickson v. Califano,* 590 F.2d 616 (6th Cir. 1978).

If as a matter of law a presumption of pneumoconiosis had arisen in the instant case pursuant to 20 C.F.R. 410.490(b)(1)(i), as the ALJ found, the Secretary erred in ordering the X-rays reread. If substantial evidence existed for the Secretary to find that a presumption of pneumoconiosis had not arisen, he was not barred from ordering a rereading.[2]

A presumption arises when a chest X-ray "establishes the existence of pneumoconiosis." 20 CFR § 410.228, referred to in § 410.490(b)(1)(i), outlines the standard to be used in determining whether an X-ray provides evidence of pneumoconiosis. It resolves the question of what is required for a single X-ray to "establish" pneumoconiosis. It does not address the question of what evidence "establishes" black lung when contradictory X-ray results are introduced.

■ We hold that a single positive X-ray establishes pneumoconiosis as a matter of law only when it is uncontradicted by prior readings. To hold otherwise would mean that a claimant could have an X-ray that has been read as negative repeatedly reread until he achieves a positive reading and that he could then invoke the presumption of

§ 410.490. When X-ray evidence is in conflict, it is for the Secretary to weigh the evidence to determine whether the X-rays establish pneumoconiosis. *Hill v. Califano,* 592 F.2d 341 (6th Cir. 1979).

This approach is in accord with our rulings in earlier cases. In *Dickson v. Califano, supra,* we found claimant had established pneumoconiosis through positive X-rays and that consequently a subsequent negative X-ray reading by a nonexamining physician did not constitute substantial evidence to rebut the presumption created by the positive reading by a qualified examining physician.

Although in *Dickson,* without analysis, we made a distinction between examining and nonexamining physicians, we find that distinction not determinative of the issue before us.[3] The examining-nonexamining distinction is based on the Supreme Court's discussion in *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In *Perales* the Supreme Court, ruling that reports of nontestifying physicians could provide substantial evidence to support the Secretary's denial of Social Security disability benefits, found significant the fact that the reporting physicians had actually examined the claimant. The fact that the reports were based on personal consultation and examination was a factor assuring their underlying reliability and probative value.

■ The reliability of X-ray interpretations, however, does not depend upon examination of the patient. Radiologists as a rule interpret X-rays without examining the patient. The reliability and probative value of an X-ray interpretation depends upon the reader's personal examination of the X-ray, his professional qualifications, and his use of accepted medical procedures.

---

2. In 1977 Congress amended the Act to prohibit the rereading of an X-ray read positive for pneumoconiosis where that X-ray is of good quality and has been read by a board certified or a board eligible radiologist. The amendment does not apply to the instant case, in which the Secretary made his final determination in December 1975, for the provisions of the amendment are not retroactive. *Moore v. Califano,* 633 F.2d 727 (6th Cir. 1980).

3. In the instant case, the taker and first reader of the 1974 X-rays was claimant's examining physician; he was not certified to read X-rays for black lung. Neither the A reader, who found one of the X-rays positive, nor the B reader, who found them negative, examined the claimant.

*See Perales, supra.* In the instant case, the B reader who found the X-ray negative personally examined the X-ray; as a certified B reader he was highly qualified to interpret X-rays for pneumoconiosis; and he reported on a standard interpretation form, requiring detailed, objective responses, which form was supplied by the Social Security Administration and was identical to that used by the A reader who had found the X-ray positive. Given these circumstances, we find the fact that the B reader did not examine the claimant irrelevant.[4]

What distinguishes the instant case from *Dickson* is that in *Dickson* only one X-ray was introduced into evidence. That had been read as positive twice—once by a certified A reader. The report of the A reader established pneumoconiosis, for there was no conflicting X-ray evidence. Therefore, we found that the Secretary had erred in ordering a rereading of the X-ray and in basing a denial of benefits on subsequent negative results.

In the instant case, two positive interpretations of the 1974 X-ray, one by a certified A reader, likewise preceded the B reader's negative reinterpretation. However, prior to the Secretary's seeking additional evidence from the B reader, a conflict could be seen to exist in the X-ray evidence. For earlier X-rays taken in 1971 and 1973 had all been read as negative.[5] Consequently, there was substantial evidence to support the Secretary's conclusion that the X-ray evidence was in conflict, that it did not necessarily establish pneumoconiosis, that no presumption had arisen, and that having

all the X-rays of claimant's chest reread serially by a physician of greater expertise was necessary for a sound decision.

### II.

■ The Black Lung Benefits Act incorporates the hearing and review procedures of the Social Security Act, 42 U.S.C. § 405. 30 U.S.C. § 923(b). Subsection (b) of § 405 provides in part:

> The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual ... [the Secretary] shall give such applicant reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.... The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter.

Subsection (a) of § 405 gives the Secretary broad discretion to promulgate regulations:

> The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evi-

---

**4.** Because claimant relies on the presumption created by X-ray evidence alone, other evidence of disease is not relevant in the instant case. Were the claimant not relying on this presumption, he would introduce other evidence of disease. In such a case, the conclusion that the patient did or did not have black lung might be more reliably made by a physician who had observed the severity of the patient's somatic symptoms. This is especially true because black lung often cannot be clearly diagnosed by either X-ray or other tests.

**5.** In order to gain the benefit of the presumption created by 20 CFR § 410.490(b)(1)(i), claimant's disability from pneumoconiosis had

to have arisen before July 1, 1973. Because of the slowly progressive character of the disease, X-rays taken after that date as well as before, may be relevant to the question of disability on June 30, 1973. *See Begley v. Mathews*, 544 F.2d 1345 (6th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1976). In the instant case, negative readings prior to the cut-off date coupled with positive readings after the cut-off date raised a question of fact regarding disability on the cut-off date. Substantial evidence supports the Secretary's finding that the X-ray evidence was in conflict since, on either side of July 1, 1973, there were contradictory findings.

dence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

The regulations establish the Appeals Council and permit it to review a case on its own initiative. The regulations further provide:

> **(b) Receipt of evidence by Presiding Officer.** Where the Appeals Council determines that additional evidence is needed for a sound decision, it will remand the case to a presiding officer for receipt of the evidence, further proceedings, and a new decision except where the Appeals Council can obtain the evidence more expeditiously and the rights of the claimant will not be adversely affected.

> **(c) Receipt of evidence by Appeals Council.** Where the Appeals Council obtains the evidence itself, before such evidence is admitted into the record, notice that evidence will be received with respect to certain issues shall be mailed to the parties, unless such notice is waived, at their last known addresses, and the parties shall be given a reasonable opportunity to comment thereon and to present evidence which is relevant and material to such issues.

20 C.F.R. § 410.664. This was the procedure followed by the Appeals Council in the instant case when it sent claimant's X-rays for rereading.

The seventh circuit has held that 20 C.F.R. 410.664(b), permitting the Appeals Council to obtain evidence, violates 42 U.S.C. § 405(b) because a decision based on evidence gathered by the Appeals Council is not a decision "on the basis of evidence adduced at the hearing" as provided by the statute. *Lonzollo v. Weinberger*, 534 F.2d 712 (7th Cir. 1976).

We find this reading of the statute to be an overly narrow one, which ignores both the Secretary's statutory authority to conduct additional proceedings and hearings and his broad regulatory power. In essence, the regulations provide for a continuation of the hearing before the Appeals Council. For a hearing is a proceeding in which evidence is introduced and the claim-

ant's right to be heard is protected. The provision that the Appeals Council may obtain evidence only if "the rights of the claimant will not be adversely affected" protects the claimant's right to be heard, for it means that in a case in which the ability to cross-examine witnesses or present additional live testimony may be of value to the claimant, the Appeals Council must remand the case to the ALJ for the gathering of additional evidence.

There is no indication that the Appeals Council abused its discretion in the instant case by failing to remand. Claimant did not object to the procedure employed. Furthermore, we are unable to perceive how he might have been prejudiced by the Appeals Council, rather than the ALJ, gathering the X-ray readings. Any cross-examination of the radiologist would have been severely limited. Although claimant hypothetically could have challenged the radiologist's qualifications, the fact that the physician was a certified B reader suggests this line of questioning would have been of little value to him.

We hold that 20 C.F.R. § 410.664(b) is not in conflict with 42 U.S.C. § 405, inasmuch as it permits the Appeals Council to gather additional evidence on its own only when the rights of the claimant will not be adversely affected. Further, since the claimant has made no showing that he was prejudiced thereby, we find that the Appeals Council did not abuse its discretion in the instant case by obtaining additional evidence itself.

### III.

Claimant was notified of the receipt of additional evidence; however, he failed to comment thereon or present additional evidence as the Appeals Council, according to regulation, invited him to do. Neither did he request oral argument before the Appeals Council. We find that under the circumstances he waived any due process objections he may have had to the Secretary's procedures. *See Teschner v. Weinberger*, 389 F.Supp. 1293 (E.D.Wis.1975). Inasmuch as claimant failed to utilize the procedures

designed to protect his due process rights, we decline to consider the constitutional adequacy of those procedures.

Accordingly, we find that the Secretary's ruling that appellant is not entitled to black lung disability benefits is supported by substantial evidence. We AFFIRM the decision of the district court.