Elijah **COUCH**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,** Defendant-Appellee.

No. 84–5541.

United States Court of Appeals, Sixth Circuit.

Argued July 10, 1985.

Decided Oct. 11, 1985.

**164**

Phyllis Robinson Smith, argued, Hyden, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Eldon F. Webb, Karl L. Anderson, John Osborn, argued, Lexington, Ky., for defendant-appellee.

Before LIVELY, Chief Judge, CONTIE, Circuit Judge, and PECK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Elijah Couch appeals from an order of the district court affirming the denial of black lung benefits by the Secretary of Health and Human Services. The appeal is taken pursuant to the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* Part B of this Act establishes a program for the payment of benefits to coal miners who are totally disabled due to pneumoconiosis arising out of coal mine employment. For the reasons that follow, we affirm the judgment of the district court.

**I.**

On June 7, 1973 appellant Couch filed an application for black lung benefits complaining of shortness of breath and coughing. The claim was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration. On September 10, 1975, a hearing was held before an administrative law judge at which the following evidence was presented.

Couch testified that he was born on June 28, 1929 and that he has a seventh-grade education. He further stated that he worked in various coal mines for "about thirteen" years, last working in 1972. Couch complained of shortness of breath which occurs at all times and worsens upon exertion, chest pains, a productive cough, and frequent colds. He also testified that he is able to tend the family garden and perform other chores, such as painting and minor repairs.

The first chest x-ray taken on July 10, 1973, was interpreted by Dr. Paul Wells, a certified A reader,[1] as negative for pneumoconiosis. The x-ray was later reread by Dr. Harold Spitz, a B reader, as negative for pneumoconiosis.

On December 17, 1973, Couch was examined by Dr. Harold Bushey. The examination revealed that Couch had a dry cough.

---

1. Both A and B readers are certified by the Public Health Service. B readers have greater qualifications. *Lawson v. Secretary of Health and Human Services,* 688 F.2d 436, 437 (6th Cir.1982).

The heart was not enlarged to percussion, the sinus rhythm was normal, and there were no murmurs. Dr. Bushey noted that the extremities were not remarkable and that reflexes were active and equal. The second x-ray was taken at the time of examination and it was interpreted by Dr. Bushey. Based on the examination and the x-ray, Dr. Bushey diagnosed chronic lung disease with pulmonary fibrosis compatible with pneumoconiosis 2/2q, cn. Dr. Spitz reread the x-ray relied upon by Dr. Bushey as negative for pneumoconiosis.

On March 14, 1974, Dr. Boyce Jones examined the claimant. Dr. Jones, a general practitioner and certified A reader, diagnosed pneumoconiosis category 1/1p. Dr. Jones interpreted a third chest x-ray which was taken at that time and noted that the hilar regions were slightly heavy and that there were some small rounded fibrotic opacities in both lungs. Dr. Whittlesey, a certified B reader, and Dr. Spitz subsequently reread this x-ray as negative for pneumoconiosis.

On September 29, 1975, the ALJ denied benefits, finding that Couch had not established the existence of pneumoconiosis by x-ray evidence. The Appeals Council, acting on the claimant's request, reviewed the ALJ's decision in light of the following additional evidence. A chest x-ray, taken on November 7, 1975, was interpreted by Dr. Cecil Taylor, a Board certified radiologist. Dr. Taylor did not offer a diagnostic interpretation, but the film was reread by Dr. Spitz as negative for pneumoconiosis. Couch was also examined by three more doctors in November, 1975. All three of those doctors, one of whom was a certified A reader, diagnosed pneumoconiosis. Dr. Spitz reread x-rays relied on by two of

those doctors and found them to be negative for pneumoconiosis.

The Appeals Council supplemented and affirmed the ALJ's decision on February 14, 1977, which became the Secretary's final decision in this case. The claimant sought review of this final decision and on May 30, 1984, the district court entered an order affirming the Secretary's denial of benefits. Couch appeals claiming that he submitted sufficient evidence to invoke both the statutory and interim presumptions of disability.

## II.

To be eligible for payment of benefits under the Act, a miner must demonstrate that he is totally disabled due to pneumoconiosis. 20 C.F.R. § 410.410. The Act provides a claimant with the benefit of a presumption of disability due to pneumoconiosis if a claimant can satisfy one of several provisions. Couch relies on the statutory presumption set out in 30 U.S.C. § 921(c)(4). That provision states:

If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram [x-ray] submitted in connection with such miner's ... claim under this title, and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection,[2] and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such a miner is totally disabled due to pneumoconiosis.... The Secretary may rebut such presumption only by establishing that (A) such miner

---

**2.** Section 921(c)(3) provides:

If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconiosis by the International Labor Organization, (B) when diagnosed by biopsy or autopsy yields massive lesions in

the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebutable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The Act also authorizes the Secretary to promulgate regulations establishing presumptions of disability. 30 U.S.C. § 921(b). Claimants who have applied for benefits prior to July 1, 1973, may qualify for disability under the Interim Regulations promulgated by the Secretary for disability benefits. Couch relies on the interim presumption in 20 C.F.R. § 410.490(b). That regulation provides:

> With respect to a miner who files a claim for benefits before July 1, 1973, ... such miner will be presumed to be totally disabled due to pneumoconiosis ..., if: (1) One of the following medical requirements is met:
>
> (i) A chest roentgenogram (x-ray), biopsy or autopsy establishes the existence of pneumoconiosis (*see* § 410.428).

Once these presumptions arise, they cannot be rebutted by negative x-ray findings. *Moore v. Califano,* 633 F.2d 727, 729 (6th Cir.1980). Couch contends that the x-ray evidence and other evidence submitted were sufficient to invoke both the statutory presumption provided by § 921(c)(4) and the interim presumption in § 410.490(b)(1)(i), and that neither of the presumptions were rebutted.[3] We consider whether the Secretary's decision was supported by substantial evidence. 42 U.S.C. § 405(g).

### A.

Couch does not satisfy the requirements to invoke the statutory presumption under 30 U.S.C. § 921(c)(4). This presumption is only available if the miner seeking benefits was employed for at least fifteen years in one or more underground coal mines. Although Couch alleged in his application for benefits that he worked in the coal mine industry for fifteen years, he testified at the hearing before the ALJ that he worked in coal mines for "about thirteen" years. Further, the ALJ found that Couch's earnings record indicated that he had worked eleven and one-quarter years in coal mines. Accordingly, Couch has not satisfied the threshold requirement of § 921(c)(4) and therefore cannot invoke the presumption of disability under that provision.

### B.

The critical issue in this case is whether sufficient evidence was presented to invoke the presumption under 20 C.F.R. § 410.490(b)(1)(i). Once the presumption is invoked, the Secretary can only rebut it by showing that a claimant is doing or is capable of doing his usual coal mine work or comparable work. *See* 20 C.F.R. § 410.490(c). A negative reading of an x-ray cannot rebut the presumption created by a prior positive reading of the same x-ray. *Dickson v. Califano,* 590 F.2d 616, 622–23 (6th Cir.1978). Accordingly, if the presumption had arisen in this case the Secretary was not permitted to have the positive x-rays reread. However, if substantial evidence existed for the Secretary to conclude that the presumption had not been invoked, then the rereadings were not barred.[4] When the Secretary's determination is supported by substantial evidence, it may not be set aside on appeal. *Moore v. Califano,* 633 F.2d 727, 729 (6th Cir.1980).

This court has addressed the issue of when sufficient evidence exists to raise the interim presumption under regulation 410.490(b)(1)(i) in several previous opinions. In

---

**3.** Since we conclude that the Secretary did not err in concluding that the presumptions were not invoked, we do not consider the sufficiency of rebuttal evidence.

**4.** In 1977 Congress amended the Act to prohibit the rereading of an x-ray read positive for pneumoconiosis where the x-ray is of good quality and has been read by a Board certified or Board eligible radiologist. The amendment does not apply to the instant case, however, because the provisions of the amendment are not applied retroactively. *Moore v. Califano,* 633 F.2d 727, 735 (6th Cir.1980). The effective date of the amendment was March 1, 1978, subsequent to the Secretary's final determination in February, 1977.

*Lawson v. Secretary of Health and Human Services*, 688 F.2d 436, 438 (6th Cir. 1982), the court held that a positive x-ray reading raises the presumption as a matter of law only when it is uncontradicted by prior readings. The evidence in *Lawson* consisted of negative readings of 1971 and 1973 x-rays, and two positive readings of one 1974 x-ray, one of which was by a certified A reader. The 1974 x-ray was also reread by a B reader as negative for pneumoconiosis. From this evidence the court determined:

> There was substantial evidence to support the Secretary's conclusion that the x-ray evidence was in conflict, that it did not necessarily establish pneumoconiosis, that no presumption had arisen, and that having all the x-rays of claimant's chest reread serially by a physician of greater expertise was necessary for a sound decision.

*Lawson*, 688 F.2d at 439.

The decision in *Lawson* is not inconsistent with this court's previous ruling in *Dickson v. Califano*, 590 F.2d 616 (6th Cir.1978), which held that a certified reader's positive interpretation of a single x-ray may be sufficient to trigger the presumption. In *Dickson*, only one x-ray was introduced into evidence. That x-ray had been read as positive for pneumoconiosis twice, once by a certified A reader, before being reread as negative. The court found that in such a situation there was no conflicting evidence and the interim presumption was triggered. The court concluded that the Secretary erred in having the x-ray reread and in denying benefits based on the negative results of the rereading, and accordingly reversed the denial of benefits. *Dickson*, 590 F.2d at 623.

The appellant relies heavily on another previous decision of this court, *Haywood v. Secretary of Health and Human Services*, 699 F.2d 277 (6th Cir.1983), to support the contention that the evidence presented in this case was sufficient to invoke the interim presumption. In *Haywood*, four physicians, one of whom was a certified A reader, interpreted x-rays as positive for pneumoconiosis. The Secretary subsequently had all of the x-rays relied upon by the physicians reread by certified readers. The films were all reread as negative for pneumoconiosis. The Secretary determined that this evidence was insufficient to invoke the interim presumption, and denied the claimant's application for black lung benefits. We reversed the denial of benefits, holding that the claimant was entitled to the interim presumption because (1) the positive x-ray reading by the certified reader was sufficient under *Dickson* to trigger the presumption; and (2) the presumption was invoked because two examining physicians diagnosed pneumoconiosis from x-rays and one of the diagnoses was category two or greater, citing *Miniard v. Califano*, 618 F.2d 405 (6th Cir.1980). *Haywood*, 699 F.2d at 284. We agree that the presumption may be invoked in accord with these standards.

■■■ The appellant asserts that the positive readings by Dr. Bushey and Dr. Jones, a certified A reader, which were made in December, 1973 and March, 1974 respectively, triggered the presumption under both of the tests in *Haywood*.[5] We disagree. The present case is more like *Lawson* than *Haywood* and we find that *Lawson* controls. As in *Lawson*, this case involves prior negative readings which contradict the positive x-ray readings presented by the claimant. The negative reading

**5.** In order to gain the benefit of the presumption created by 20 C.F.R. § 410.490(b)(1)(i), the claimant's disability from pneumoconiosis had to have arisen before July 1, 1973. Because of the slowly progressive character of the disease, x-rays taken after that date as well as before, may be relevant to the question of disability on June 30, 1973. *See Begley v. Mathews*, 544 F.2d 1345, 1353–54 (6th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1976). In the instant case the examinations by Drs. Bushey and Jones are close enough to the cutoff date to be relevant. However, the examinations in November, 1975, were made too long after the cutoff date to be relevant to the question of disability. *See Elkins v. Secretary of Health and Human Services*, 658 F.2d 437 (6th Cir.1981) (February 3, 1975 was too late to be considered as evidence). Accordingly, those readings are not considered in this appeal.

by Dr. Wells, a certified reader, prevented the reading by Dr. Jones from invoking the presumption as a single positive reading by a certified reader. The prior negative reading also prevented the positive readings of Dr. Jones and Dr. Bushey from triggering the presumption as a matter of law. The prior negative findings provided the Secretary with substantial evidence to conclude that the x-ray evidence was in conflict. Due to the conflict in evidence, the Secretary was also justified in having the positive x-rays reread serially to determine whether the existence of pneumoconiosis had been established under the regulation. When x-ray evidence is in conflict, it is for the Secretary to weigh the evidence to determine whether the x-rays establish pneumoconiosis. *Hill v. Califano,* 592 F.2d 341, 346 (6th Cir.1979). Since both of the x-rays initially found to be positive were reread as negative for pneumoconiosis, and there was prior negative readings by certified readers, there was substantial evidence to support the Secretary's conclusion that the interim presumption had not been invoked.

This case is distinguishable from *Haywood. Haywood* involved four x-rays taken prior to the July 1, 1973 cutoff date which were all initially read as positive for pneumoconiosis before being reread as negative. Since there were no prior negative readings, the Secretary's decision to have the x-rays reread was not based on substantial evidence and was in error. The presumption under regulation 410.-490(b)(1)(i) was properly triggered by the uncontradicted positive readings. This result is not inconsistent with *Lawson* since *Lawson* recognized that positive x-ray readings may establish pneumoconiosis as a matter of law when they are uncontradicted by prior readings.

■ In the present appeal, however, there are prior contradictory readings. This difference in the order of the positive and negative readings is significant, despite dictum in *Haywood* to the contrary. We hold that when positive readings are contradicted by prior negative x-rays, there is substantial evidence to support a finding by the Secretary that the evidence is in conflict and the Secretary may have the

positive x-rays reread in order to determine whether a claimant is disabled due to pneumoconiosis.

We recognize that pneumoconiosis is a progressive disease and that a claimant's condition may change after a negative diagnosis has been made. Accordingly, when the Secretary is presented with a prior negative x-ray reading and a subsequent positive x-ray, the Secretary may not simply declare the x-ray evidence to be in conflict and deny benefits on that basis alone. Our holding merely permits the Secretary to order a rereading of the subsequent positive x-ray to verify any change in a claimant's condition. Depending on the results of such a rereading, the Secretary may conclude that pneumoconiosis has or has not been established. Allowing the Secretary to order a rereading in situations where the x-ray evidence is in conflict will provide the Secretary with sufficient information to make sound decisions regarding the award or denial of black lung benefits.

Accordingly, we find that the Secretary's decision that the appellant is not entitled to black lung disability benefits is supported by substantial evidence, and we AFFIRM the judgment of the district court.