810 F.2d 201
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dorothy LAMBERT, on behalf of, Alberta HINES (Widow of
Horace Hines), Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 85-3789.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1986.
 
 Before MARTIN, GUY and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, Dorothy Lambert, on behalf of Alberta Hines (widow of Horace Hines), appeals the Benefits Review Board denial of Alberta Hines' application for black lung benefits as the widow of a miner. Because we find that the decision of the Administrative Law Judge (ALJ) was supported by substantial evidence, we affirm.
 
 I.
 
 2
 It is undisputed that Horace Hines worked for twenty years in a coal mine in Kentucky. He died at the age of 80 on January 30, 1980, of a stroke. Prior to that time he had filed a claim for benefits with the Department of Labor. After Mr. Hines' death, his widow, Alberta Hines, filed a survivor's claim for benefits under the Act, and her claim was merged with his. The claim was denied and an evidentiary hearing was then held before an ALJ, who affirmed the denial in a written opinion. The Benefits Review Board reviewed the decision, found it supported by substantial evidence, and affirmed.[1]
 
 
 3
 On appeal, the petitioner first contends that she is entitled to the ten year interim presumption of 20 C.F.R. § 727.203(a)(1) based on X-ray readings.[2] The X-ray evidence is as follows. An X-ray dated September 13, 1976, was read as not completely negative by Dr. Briney on September 19, 1976. On December 5, 1976, Dr. Kelly, a "B" reader, that is, a person certified by the Public Health Service as having especially high qualifications, reread the X-ray and considered it completely negative for pneumoconiosis. An X-ray dated November 21, 1979, was read as "essentially negative" by Dr. Slezas. Dr. Bhorjraj reported that X-rays in 1979 and in 1980 showed no evidence of pneumoconiosis. Dr. Ambrozaitis, a board certified radiologist, read a January 18, 1980, X-ray as showing "no evidence of active pulmonary disease." On August 10, 1982, Dr. Gale, a "B" reader, reread a copy of the first X-ray, dated September 13, 1976, and indicated chest findings which were borderline for pneumoconiosis. Upon a review of the X-ray evidence, the ALJ concluded that the claimant had not established pneumoconiosis by a preponderance of the X-ray evidence.
 
 
 4
 The petitioner challenges this conclusion and argues that what the ALJ was facing here was a "true doubt" situation. Respondent acknowledges that in a true doubt situation, where the record contains equally probative but contradictory medical evidence, the ALJ must resolve the conflict in the claimant's favor. However, respondent argues, and we agree, that the ALJ here did not fact a true doubt situation growing out of equally probative evidence. The ALJ, contrary to petitioner's assertions, did not ignore the readings of the other X-rays, which were all negative. Rather, he simply indicated that reports by "B" readers were "more persuasive." The ALJ correctly noted that "all conflicting X-rays ... must be weighed prior to invocation." Such weighing of conflicting evidence is proper for the finder of fact and cannot be disturbed on appeal. Although the ALJ's articulation of his reasons could have been more complete, if his reasoning "may reasonably be discerned" the outcome is not affected. Markus v. Old Ben Coal Co., 712 F.2d 322, 327 (7th Cir.1983).
 
 
 5
 Petitioner then asserts that even if this was not a true doubt situation, a single positive X-ray reading is sufficient to establish pneumoconiosis. She relies upon Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986) (en banc). Petitioner has misinterpreted Stapleton. In Stapleton, the court held that a single positive X-ray is sufficient to establish pneumoconiosis. It did not hold that a single reading of an X-ray, which had previously been read as negative, would establish pneumoconiosis. Second, this court has rejected the plurality view of the Fourth Circuit in Stapleton (that a single positive X-ray is sufficient to establish pneumoconiosis). Back v. Director Office of Workers' Comp., 796 F.2d 169, 172 (6th Cir.1986). Finally, this court has previously dealt with this exact issue in Lawson v. Secretary of Health and Human Services, 688 F.2d 436 (6th Cir.1982), a Part 410 case concerning the establishment of the existence of pneumoconiosis by a chest X-ray. The court stated:
 
 
 6
 We hold that a single positive X-ray establishes pneumoconiosis as a matter of law only when it is uncontradicted by prior readings. To hold otherwise would mean that a claimant could have an X-ray that has been read as negative repeatedly reread until he achieves a positive reading and that he could then invoke the presumption of § 410.490. When X-ray evidence is in conflict, it is for the Secretary to weigh the evidence to determine whether the X-rays establish pneumoconiosis.
 
 
 7
 Lawson, 688 F.2d at 438. The issue before the ALJ here was not conflicting X-rays, but conflicting readings of the same X-ray. He appropriately weighed those two readings along with all of the negative readings by the other doctors. Engle v. Office of Workers' Comp., 792 F.2d 63 (6th Cir.1986).
 
 II.
 
 8
 The petitioner next contends that she has invoked the fifteen year presumption of total disability due to pneumoconiosis under either Part 410 or Part 718, based on ventilatory function tests. Under Part 410 a claimant must have qualifying values in an FEV-1 test and MVV test.[3] Only one set of ventilatory tests was run on Mr. Hines prior to his death. Dr. Briney, who ran the tests, reported that the "reduced maximum voluntary ventilation is probably a function of the patient's effort." The ALJ thus discredited the MVV values, which petitioner does not now dispute. Rather, she contends that the FEV-1 value alone is sufficient for the purposes of establishing disability under Part 410. However, it is clear that § 410.414(b) requires the claimant to satisfy the requirements of § 410.426. Section 410.426(b) deals with ventilatory function tests (the only pertinent area in which claimant offers evidence) and requires the miner to establish qualifying values in both the FEV-1 and an MVV test.
 
 
 9
 Petitioner's argument as it relates to ventilatory function tests under Part 718 is predicated upon § 718.204(c) under which a miner may establish total disability according to the results of a FEV-1 test and a FVC test.[4] However such tests establish total disability only "in the absence of contrary probative evidence." We find the medical reports submitted to the ALJ to constitute contrary probative evidence.[5] Mr. Hines was treated for chronic bronchitis and Dr. Briney reported that Hines had a restrictive and an obstructive pulmonary defect, but he also found "no clinical evidence of intrinsic lung disease." He further reported that Mr. Hines' cough did not appear as much as three months a year, he had no phlegm, and his breath sounds were "normal" with "no rales." In a final report on Mr. Hines' physical condition Drs. Bhrojraj and Mitchell noted that there was no exertional pain or dyspnea, "chronic cough and expectoration denied," and that Mr. Hines' chest was clear. There was lay testimony from Alberta Hines and Dorothy Lambert that Mr. Hines suffered from a chronic cough and coughed up phlegm, but that lay testimony was before the ALJ and he properly weighed it against the conflicting medical evidence.
 
 
 10
 The evidence would indicate that Horace Hines had some type of respiratory ailment. However, the question for the ALJ was whether the miner was totally disabled due to pneumoconiosis. The ALJ was faced with conflicting evidence and forced to weigh it. We find that he had substantial evidence for his conclusion that the evidence did not invoke the legal presumption of either Part 727 or Part 410. We further find that, although technically the ALJ ought to have considered the evidence under Part 718, there is no need to remand this case where we find such clearly persuasive contrary probative evidence to the effect that petitioner did not suffer from a "totally disabling respiratory or pulmonary impairment...." 304 U.S.C. § 921(c)(4).
 
 
 11
 Accordingly, the judgment of the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 The Board must affirm the ALJ if his opinion is supported by substantial evidence, is rational, and complies with the law. O'Keefe v. Smith, Hinchman & Grylls Associates, 380 U.S. 359 (1965); 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a)
 
 
 [2]
 Section 727.203 states in pertinent part as follows:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis.
 
 
 [3]
 Vital capacity is the volume of air that can be exhaled after a maximum inspiration. The forced vital capacity, or FVC, is the vital capacity performed with expiration as forceful and rapid as possible; the one second forced volume, or FEV-1, is the capacity test which measures the amount of air expended in one second. In contrast, the maximum voluntary ventilation, or MVV, is the total volume of air expelled over a period of one minute during repetitive maximal respiratory effort. Combs v. Office of Workers' Comp., 752 F.2d 203, 205 (6th Cir.1985) (J. Martin, dissenting)
 
 
 [4]
 The ALJ and the Board concluded that this claim should only be reviewed pursuant to Parts 727 and 410. However, 20 C.F.R. § 727.203(d) allows a claimant who cannot invoke the interim presumption of Part 727 to attempt to establish eligibility under the generally more restrictive criteria of Part 718. Respondent implicitly concedes this fact on appeal
 
 
 [5]
 We also note, without placing primary reliance on it, that the respondent makes a convincing argument that Dr. Long's evaluation of the ventilatory function test resulted in a conclusion that all the test results were invalid and not just the MVV values