848 F.2d 190
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Russell T. EVERLY, Petitioner,
v.
PEABODY COAL CO,; Director, Office of Workers' Compensation
Programs, U.S. Department of Labor, Respondents.
 No. 87-3569.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Russell T. Everly seeks review of the decision of the Benefits Review Board ("the Board") of the United States Department of Labor denying him benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901, et seq. ("the Act"). Because we find the Board's decision is supported by substantial evidence, we affirm.
 
 I.
 
 2
 Petitioner filed his claim for black lung benefits on February 19, 1980. Although the claim was initially granted, the Department of Labor later vacated its findings based on additional evidence and denied the claim on August 14, 1981. In accordance with the Act, the claim was then referred to the Office of Administrative Law Judges.
 
 
 3
 After a formal hearing, the Administrative Law Judge ("ALJ") issued his decision and order denying petitioner benefits. The ALJ found that the petitioner had failed to invoke the presumption of total disability due to pneumoconiosis available under 20 C.F.R. Sec. 727.203. Petitioner appealed the denial to the Board, which affirmed the ALJ's decision on April 22, 1987. Petitioner then timely filed a petition for review in this court.
 
 
 4
 The record discloses that petitioner worked as a miner, as defined by 30 U.S.C. Sec. 902(d), 20 C.F.R. Sec. 725.202(a), for approximately thirty-four years between 1943 and 1979. During this period, petitioner worked in various capacities including engineer's helper, weigh master, pit foreman, drilling and shooting supervisor, and superintendent--all of which involved exposure to coal dust. Petitioner was forced to terminate his employment in July 1979 when he ruptured a disc in his back and underwent his fourth back surgery.
 
 
 5
 The medical evidence in this case is extensive. The record contains more than thirty X-ray readings based on over ten films. The first four films (dated July 7, 1960; August 23, 1965; January 24, 1966; and February 3, 1969) were all read by Dr. Ralph Quillen, a B-reader.[1] Dr. Quillen found these films negative, i.e., showing no evidence of pneumoconiosis.
 
 
 6
 Six physicians read a fifth film, dated October 6, 1974. Five of these (all B-readers) found the film negative for pneumoconiosis. The sixth physician, Dr. Eric Norsworthy, found the film "compatible with Class 1/1 pneumoconiosis." J.A. at 66-67. Dr. Eric Norsworthy is a family practitioner who is not a Board-certified X-ray reader.
 
 
 7
 A sixth film, dated August 15, 1980, was read by four physicians. Again, the interpretations of the three B-readers who read the film were that it was negative for pneumoconiosis. The one positive reading of this film was rendered by Dr. Joseph Stokes, who read the film on August 21, 1980, and found the film disclosed the presence of pneumoconiosis. Dr. Stokes is a Board-certified radiologist, although not a B-reader.
 
 
 8
 A seventh film, dated January 22, 1981, was read by seven physicians. All of the physicians who read this film found it negative for pneumoconiosis. An eighth X-ray, dated July 8, 1981, was read by five physicians, four of whom (all B-readers) found the film negative for pneumoconiosis. One physician, Dr. Robert Norsworthy, a general practitioner, found the film positive for pneumoconiosis.
 
 
 9
 The ninth X-ray was taken on August 10, 1981. Three physicians read this film, two of whom found it positive for pneumoconiosis. One of these physicians, Dr. William Thaxton Payne, is a B-reader. This film was later found negative by Dr. Jerome Wiot, also a B-reader.
 
 
 10
 The most recent X-ray of record is dated January 9, 1984. This film was read by two physicians, both B-readers. Dr. Quillen found the film negative. Dr. Wiot, however, found the film unreadable.
 
 
 11
 The record also contains seven ventilatory studies. Of these studies, six were nonqualifying under 20 C.F.R. Sec. 727.203(a)(2).[2] The final study, which was conducted on July 20, 1984, by Dr. Eric Norsworthy, did produce qualifying values.
 
 
 12
 There are also seven arterial blood gas studies of record. Four of these studies, including the most recent, failed to qualify under 20 C.F.R. Sec. 727.203(a)(3).[3] The three remaining studies, however, did yield qualifying values.
 
 
 13
 In addition to the studies themselves, there was expert testimony in the record evaluating the significance of the tests. Dr. Thomas A. Gallo testified that the variations in the different studies could be the result of: (1) laboratory error, (2) lowered ventilation levels due to petitioner's back problems, or (3) respiratory infection at the time of testing. Dr. William Anderson testified that the qualifying studies may not demonstrate the presence of a pneumoconiosis-related impairment. He stated that if several studies were normal in range, the qualifying studies do not necessitate a finding of an impairment, "but rather [indicate] something which fluctuates between better and worse, most often cardiovascular disease." ALJ's decision at 8.
 
 
 14
 The record contains medical reports and depositions from seven physicians who examined petitioner. Dr. George E. Ainsworth, Jr., a Board-certified orthopedic surgeon, first examined petitioner on July 3, 1979, when he was hospitalized for chronic back discomfort. At that time, Dr. Ainsworth observed that petitioner's chest was clear, but that petitioner suffered from probable tension headaches, mild anxiety, and chronic low back pain. When his deposition was taken, Dr. Ainsworth testified that petitioner's back condition, despite four operations, was permanently and totally disabling. J.A. at 282.
 
 
 15
 Dr. J.R. Love also examined petitioner after petitioner's fourth back operation, and his examination focused entirely on petitioner's back problems. On January 22, 1981, Dr. Thomas A. Gallo, who is a pulmonary specialist, also examined petitioner. Dr. Gallo stated in his report:
 
 
 16
 On direct questioning [petitioner] does state he has been short of breath for three-four years and will note it frequently with exertion or even excitement. He denies any exertional chest pain. He has a cough productive of some dark sputum. He will wheeze only occasionaly [sic]. He denies a past history of asthma, pneumonia, or tuberculosis. He has smoked a pipe for the past 3-4 months but prior to that he smoked one pack of cigarettes a day for about 29 years.
 
 
 17
 J.A. at 259. Dr. Gallo's conclusion was that petitioner had no clinically apparent lung disease. He stated that the symptoms petitioner had were "compatible with bronchitis." Id. After a second examination on June 5, 1984, Dr. Gallo concluded that "no physical limitations would be placed on this patient speaking strictly from a pulmonary standpoint." J.A. at 203.
 
 
 18
 Dr. Robert Norsworthy examined petitioner on July 7, 1981, at the request of petitioner's counsel. Dr. Robert Norsworthy recorded petitioner's smoking history and also the fact that petitioner appeared in moderate distress due to back pain. He reviewed the results of his physical examination as well as various objective tests, including a chest X-ray, a pulmonary function study which showed no evidence of obstructive or restrictive disease, and a blood gas study. He diagnosed pneumoconiosis, chronic lumbar myositis, and post-operative herniated disc syndrome. During Dr. Robert Norsworthy's deposition, he confirmed his findings that petitioner suffered from pneumoconiosis and stated that the cause for petitioner's trouble was "a combination of his exposure to rock and coal dust over a period of thirty-five (35) years plus his usage of tobacco." J.A. at 43-44. Dr. Norsworthy also testified that petitioner's smoking history may have affected petitioner's pulmonary function by reducing elasticity in the peripheral tissues of the lungs.
 
 
 19
 Dr. Sam H. Traughber examined petitioner on August 10, 1981, also at the request of petitioner's counsel. Dr. Traughber reviewed petitioner's employment, medical and smoking history, conducted lung volume and arterial blood gas studies, and also reviewed an X-ray of petitioner. His conclusion was that the X-ray showed findings compatible with pneumoconiosis, and he noted "[a]t this point, [petitioner] has a chest X-ray [compatible with ... pneumoconiosis], but his lung volume and arterial blood gas studies are essentially normal." J.A. at 22. Dr. Traughber's impression was that there was evidence of pneumoconiosis.
 
 
 20
 Dr. William Anderson examined petitioner on October 14, 1983, also at the request of petitioner's counsel. He concluded that petitioner had hypertensive cardiovascular disease, pneumoconiosis, and degenerative arthritis of the spine, but he detected no abnormalities from a pulmonary or respiratory standpoint. Dr. Anderson reviewed results of a pulmonary function and arterial blood gas study taken of petitioner and found that the studies did not indicate the presence of any permanent pulmonary impairment. According to Dr. Anderson, petitioner's complaints of shortness of breath and coughing were caused by cardiovascular disease. During cross-examination, Dr. Anderson agreed that, on the basis of the reports and studies supplied by employer's counsel, petitioner was not precluded from performing the work of an underground or surface coal miner. However, on redirect examination by petitioner's counsel, Dr. Anderson stated that on the basis of his examination of petitioner and the tests performed by him, petitioner would not be able to perform the work of a coal miner.
 
 
 21
 Dr. Eric Norsworthy examined petitioner on January 8, 1984, when petitioner was hospitalized with chronic low back pain. Petitioner had been moving heavy things around his home and this aggravated his back condition. A physical examination revealed that petitioner's lungs were clear; however, Dr. Norsworthy reviewed chest X-rays of petitioner, dated October 6, 1974, and determined that these X-rays were positive for pneumoconiosis. He concluded that based on the tests and observations he made of petitioner, that petitioner "certainly does have a significant pulmonary problem that is probably directly related to his exposure from this coal dust and probably would be disabling in disregard to his back problem." J.A. at 69.
 
 II.
 A.
 
 22
 This court "has a limited scope of review over the decisions of the Benefits Review Board" and the ALJ. Welch v. Director, Office of Workers' Compensation Programs, 808 F.2d 443, 445 (6th Cir.1986) (per curiam). If the findings of the ALJ are supported by substantial evidence, then we are bound by those findings. Engle v. Director, Office of Workers' Compensation Programs, 792 F.2d 63 (6th Cir.1986). "Our function is only to see that the decision of the ALJ and Board was supported by substantial evidence, and that all the evidence that the statute mandates to be considered has been considered." Id. at 64. This court may not reweigh the evidence de novo. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir.1983).
 
 
 23
 In the present case, petitioner argues the ALJ erred in failing to invoke the presumption of total pneumoconiosis-related disability found at 20 C.F.R. Sec. 727.203. Recently, the Supreme Court has explained the duty of an ALJ in analyzing whether the presumption should be invoked. In Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 108 S.Ct. 427 (1987), the Supreme Court rejected the Fourth Circuit view, see Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986) (en banc) (case below), that a single item of qualifying evidence is always sufficient to invoke the presumption.
 
 
 24
 Rather, the court held a claimant's burden is to establish, by a preponderance of the evidence, the existence of the basic facts necessary to invoke the presumption. Mullins Coal Co., 108 S.Ct. at 434. "The ALJ's task is, of course, to weigh the quality, and not just the quantity, of the evidence, before determining whether the presumption has been invoked." Id. at 434 n. 23.
 
 
 25
 Under either the Court of Appeals' or the Secretary's interpretation of the regulation, a single item of qualifying evidence may be sufficient to invoke the presumption. Indeed, the authors of the regulation apparently expected that the presumption would regularly be invoked on the basis of a single item of qualifying evidence. Reasoning from that expectation, the Court of Appeals concluded that the presumption must be invoked whenever the record contains a single item of qualifying evidence. But as we have demonstrated above, that conclusion is compelled by neither the text nor the history of the regulation.
 
 
 26
 Id. at 438-39 (footnote omitted) (emphasis in original).
 
 
 27
 The teaching of Mullins Coal Co. is that a benefits claimant must prove certain basic facts to be entitled to the presumption of pneumoconiosis-related disability. Thus, it may not be enough, for example, to present one X-ray reading of pneumoconiosis, but rather the X-ray evidence, taken as a whole, must "establish[ ] the existence of pneumoconiosis." 20 C.F.R. Sec. 727.203(a)(1). Where the ALJ concludes that the presumption is not invoked, our role is necessarily limited to determining whether that conclusion is supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 B.
 
 28
 Petitioner asserts on appeal that the ALJ's decision not to invoke the presumption under 20 C.F.R. Sec. 727.203(a)(1), (2), (3), and (4) is not supported by substantial evidence. However, in our view, the ALJ's decision is supportable.
 
 
 29
 20 C.F.R. Sec. 727.203(a)(1) provides that a chest X-ray which establishes the existence of pneumoconiosis entitles a petitioner with a sufficient employment history to the presumption of total pneumoconiosis-related disability. In the present case, petitioner takes issue primarily with the August 10, 1981, X-ray reviewed by three physicians; viz., Dr. Traughber, Dr. Payne, and Dr. Wiot. As stated, Dr. Traughber and Dr. Payne, a B-reader, found this film positive for pneumoconiosis. Dr. Wiot, however, also a B-reader of noteworthy credentials, found this film negative. Further, Dr. Quillen, also a B-reader, found a film taken twenty-nine months later, on January 9, 1984, to be negative for pneumoconiosis. Given the conflicting conclusion by Dr. Wiot as to the August 10, 1981, X-ray, together with the later negative X-ray finding by Dr. Quillen, the ALJ concluded that the presumption should not be invoked on the basis of the August 10, 1981, X-ray.
 
 
 30
 Since pneumoconiosis is a progressive disease, the ALJ is entitled to consider X-rays later in time to be the most persuasive. See Mullins Coal Co., 108 S.Ct. at 436 ("[I]n weighing conflicting X-ray readings ALJs [should] keep in mind the character of the black lung disease.... [P]neumoconiosis is ... progressive [therefore] early negative X-ray readings are not inconsistent with significantly later positive readings.... This proposition is not applicable where the factual pattern is reversed." (quoting Elkins v. Beth-Elkhorn Corp., 20 B.L.R. 1-683, 1-686 (Ben.Rev.Bd.1979))). The ALJ is also entitled to give greater weight to the findings of a B-reader. See Creech v. Benefits Review Board, --- F.2d ---- (slip op. No. 85-3895) (6th Cir. March 15, 1988). Thus, in our view, the ALJ's finding that the presumption had not been invoked under section (a)(1) is supported by substantial evidence.
 
 
 31
 Section 727.203(a)(2) of the regulations provides that ventilatory studies which establish the presence of a chronic respiratory or pulmonary disease, as demonstrated by values which are equal to or less than the values specified in the subsection table, entitle an individual to a presumption of total pneumoconiosis-related disability. Petitioner argues that he is entitled to the presumption under this subsection.
 
 
 32
 Although petitioner relies on Campbell v. Consolidation Coal Co., 811 F.2d 302 (6th Cir.1987), we conclude that his reliance on this case is misplaced. In Campbell, the miner had been employed in the mines for over thirty-five years, and the ventilatory studies presented showed increasingly worse results. The ALJ concluded that based on the studies, the miner had invoked the presumption under section (a)(2). The Board reversed, and this court found that the Board had exceeded the scope of its review in reversing the ALJ's decision. We held that the decision to grant benefits was supported by substantial evidence as the ventilatory studies submitted, unlike the ones in the present case, showed a consistent, gradual worsening. Thus, Campbell, in fact, cuts against petitioner's position here; the case stands for the proposition that the decision of the ALJ, where there is conflicting evidence of record and the evidence is rationally weighed, should be upheld.
 
 
 33
 While there were seven ventilatory studies taken in the present case, only one was qualifying. Even though the qualifying study was most recent in time, a study conducted only two months earlier, and one conducted less than one year earlier, revealed nonqualifying values. Weighing the conflicting studies, the ALJ concluded petitioner had not established the presence of a chronic respiratory or pulmonary disease. In our view, this decision is supported by substantial evidence.
 
 
 34
 Petitioner also argues that the ALJ erred in failing to invoke the presumption under section (a)(3). Section 727.203(a)(3) provides that blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood, which is indicated by values which are equal to or less than the values specified in the subsection, entitle a black lung benefits claimant to the presumption of pneumoconiosis. The evidence, as reviewed above, showed that of the seven blood gas studies conducted, four, including the latest two, were nonqualifying. The ALJ considered these conflicting studies and determined, based on the assessments rendered by the pulmonary disease experts who reviewed the studies, that they failed to "demonstrate the presence of an impairment." Claimant raises no legal or factual grounds upon which this court may fault the ALJ's weighing rationale.
 
 
 35
 Rather, petitioner's argument is merely that this court should consider the blood gas studies presented to have shown the "presence" of an impairment in the transfer of oxygen to the blood as required by the subsection. Our role, however, is not to review the ALJ's decision de novo, and where the ALJ has properly weighed the evidence and the evidence is in conflict, we must uphold the decision of the ALJ.
 
 
 36
 Finally, petitioner argues that the presumption should have been invoked under section (a)(4). That section provides that the interim presumption arises where "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. Sec. 727.203(a)(4).
 
 
 37
 In the present case, several physicians gave their documented opinions as to whether petitioner suffered from a totally disabling impairment. The ALJ rationally set forth and weighed all of the medical reports of record and concluded that the evidence was insufficient to establish invocation under this subsection.
 
 
 38
 The three medical reports concluding that petitioner did suffer a totally disabling pulmonary and respiratory impairment came from Doctors Eric Norsworthy, Robert Norsworthy, and William Anderson. The ALJ carefully set out his reasons for discrediting the opinions of these three doctors. As to Dr. Eric Norsworthy, the ALJ noted that the doctor specialized in a family and general practice and did not have the qualifications of a pulmonary specialist. Moreover, the ALJ observed that Dr. Eric Norsworthy relied heavily on an X-ray taken in 1974, which had subsequently been interpreted by five B-readers as negative. As to Dr. Robert Norsworthy, the ALJ found that he likewise specialized in a family and general practice and relied on an X-ray from July 8, 1981, subsequently found by four B-readers as either negative or unreadable.
 
 
 39
 Finally, as to Dr. Anderson, the ALJ noted that while the doctor is a pulmonary specialist, his conclusion was assailed by Dr. Gallo, and further noted that Dr. Anderson relied on an X-ray film which was not produced in the record. Thus, the ALJ concluded that the reasoned opinions of the other examining physicians that petitioner did not have a totally disabling respiratory or pulmonary impairment were entitled to more weight. In our view, the ALJ's decision in this regard is supported by substantial evidence.
 
 III.
 
 40
 Accordingly, as we have determined that substantial evidence supports the Board's decision, we AFFIRM the denial of black lung benefits in this case.
 
 
 
 [1]
 A B-reader is one who has been certified by the National Institute of Occupational Safety and Health, United States Public Health Service, 42 C.F.R. Sec. 37.51, as having demonstrated a proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services. ALJ's Decision at 8. Because a B-reader has proven proficiency in the reading of X-rays, the diagnosis of a B-reader may be given greater weight by the ALJ. Lawson v. Secretary of Health and Human Servs., 688 F.2d 436 (6th Cir.1982)
 
 
 [2]
 Section 727.203(a)(2) provides that an individual with ten years coal mine employment is presumed totally disabled due to pneumoconiosis if ventilatory studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values equal to or less than the values specified in the subsection
 
 
 [3]
 Section 727.203(a)(3) provides that the presumption of pneumoconiosis arises where an individual with ten years or more coal mine employment produces blood gas studies that demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values equal to or less than those specified in the subsection