**Dow CONN, Petitioner,**

v.

**WHITE DEER COAL COMPANY; Old Republic Companies; Office of Workers' Compensation Programs; United States Dept. Labor, Respondents.**

No. 87–3982.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1988.

Decided Dec. 1, 1988.

Albert A. Burchett (argued), Prestonsburg, Ky., for petitioner.

Kiernan F. Kilcullen, Kilcullen, Wilson & Kilcullen, Jeffrey J. Bernstein, Office of the Sol., U.S. Dept. of Labor, Barbara J. Johnson, Mark E. Solomons (argued), Arter & Hadden, Washington,· D.C., Laura Metcoff Klaus, for respondents.

Before WELLFORD and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

I.

This black lung appeal involves a challenge to a lengthy decision of an administrative law judge (ALJ) denying benefits, later affirmed by the Benefits Review Board (BRB). The record includes a plethora of conflicting medical evidence concerning all of the tests for both invocation and rebuttal of the interim presumption of total disability due to pneumoconiosis arising out of coal mine employment set forth in 20 C.F.R. § 727.203. In his decision, issued before the United States Supreme Court's decision in *Mullins Coal Co. v. Director, OWCP,* — U.S. ——, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), the ALJ invoked the presumption of disability under both § 727.203(a)(3) and (a)(4), but found the pre-

sumption rebutted by the employer under § 727.203(b)(2) as well as (b)(4). We affirm the denial of benefits upon the alternative ruling of the ALJ under subsection (b)(4). Although the BRB did not affirm on this basis, the issue was presented to it and is therefore properly before us, taking into account that both the BRB and this court apply the same standard of review to the ALJ's decision.

## II.

Dow Conn, born April 30, 1928, filed an application in 1975, approximately three weeks following his retirement from underground coal mining, seeking federal Black Lung Benefits Act benefits. During the period 1945 through 1975, Conn was employed in the underground coal mines for ten and one-half years.

Following denial of Conn's claim by the Department of Labor (DOL) in August of 1977, and a subsequent DOL denial of Conn's claim in November 1979 after automatic review pursuant to the Black Lung Benefits Reform Act of 1977, a hearing was held before the administrative law judge (ALJ) in October of 1981. At the hearing, substantial medical evidence was adduced, "including chest x-ray interpretations, pulmonary function and arterial blood gas test results, and medical reports and depositions evaluating Conn's health).

Conn was examined by Dr. W. Grady Stumbo, who took a complete history, conducted a physical examination, took a chest x-ray, and performed ventilatory function studies in December of 1974. Not a "B" reader,[1] Dr. Stumbo interpreted Conn's x-ray as revealing stage 1/1 q pneumoconiosis. The ventilatory function tests resulted in qualifying values, but no tracings or statement of effort were attached. Dr. Stumbo diagnosed pneumoconiosis and concluded that Conn was therefore "unemployable in his usual acceptable occupation as a coal miner."

The following February Conn was examined by Dr. W.T. Anderson, who conducted a physical examination, including chest auscultation and percussion, pulmonary function studies including spirometry, and a chest x-ray. Dr. Anderson testified that Conn's x-ray revealed early second stage pneumoconiosis and that his breathing capacity, as demonstrated by his pulmonary function studies, was definitely impaired, with FEV and FEF values both below 40% of those predicted. Conn's objective and subjective symptoms were found generally to be consistent with this diagnosis. Dr. Anderson concluded that, if asked, he would recommend that Conn be rejected for coal mining employment because of the disease's progressive nature. Dr. Anderson also opined that Conn would be precluded from any other employment because of his lack of pulmonary reserve.

Subsequently, in September of 1975, Conn was seen by Dr. Ballard Wright, who performed a physical examination, EKG, pulmonary function studies, and an x-ray. Dr. Wright noted a mild increase in the AP diameter of Conn's chest with distant breath sounds, but heard no rales or rhonchi. Both the EKG and the x-ray were within normal limits, and Dr. Wright found no pneumoconiosis. The pulmonary function studies yielded $FEV_1$ and FVC values within normal limits; however, Dr. Wright noted some evidence of mild obstructive airway disease. Also, Conn had mild resting hypoxemia, but his blood oxygen level was normal with exercise, indicating ventilatory reserve. Dr. Wright diagnosed chronic obstructive pulmonary disease, bronchetic type, associated with physiologic evidence of small airway disease.

One month later, Dr. Lowell Martin evaluated Conn, conducting a physical examination and taking a chest x-ray. Dr. Martin's report consisted of a form letter, which included the pre-printed sentence "His Physical Examination disclosed him to be short of breath." Upon examination of

---

**1.** A "B" reader is a physician who has completed a course and passed a proficiency examination

conducted by the National Institute for Occupa-

Conn's x-ray, Dr. Martin, an "A" reader,[2] concluded that Conn had pneumoconiosis, 1/1 q stage. The form letter also contained the pre-printed opinion that "[t]his patient should not return to underground coal mining because of his silicosis."

Dr. Martin testified that Conn's subjective and objective symptoms were consistent with the diagnosis of pneumoconiosis and stated further that Conn showed evidence of pulmonary impairment. He gave no further explanation of the "symptoms" to which he referred, however, and did not describe the extent of Conn's impairment. In response to several leading questions, Dr. Martin affirmed that, in his opinion, Conn was totally and permanently disabled from working either in the coal mines or any other work where he would be exposed to dust or noxious gases, or that would require physical labor. Dr. Martin, who performed pre-employment exams for coal mining companies, also stated that Conn would be rejected for employment if diagnosed with pneumoconiosis.

In the next month, November of 1975, Conn was examined by Dr. W.F. Clarke, who also took a chest x-ray and completed pulmonary function studies. Dr. Clarke heard coarse rales throughout Conn's lung field, primarily in the left lung, and observed a prolonged expiratory phase with increased AP chest diameter. The values obtained by the pulmonary function studies exceeded those specified in 20 C.F.R. § 727.203(a)(2) and were therefore insufficient to establish the presence of a chronic respiratory or pulmonary disease pursuant to that regulation. Based upon Conn's chest x-ray, Dr. Clarke diagnosed 1/2 p pneumoconiosis and concluded that Conn was "permanently and totally disabled from all work in a dusty environment."

Several years later, in May of 1979, Dr. J.W. Sutherland examined Conn and found his chest to be clear and his chest diameter to be normal. He reported two arterial blood gas tests with results within normal limits both before and after exercise and

pulmonary function study values within normal limits. He noted that Conn could only climb forty-four steps before complaining of shortness of breath. Apparently based upon Conn's reported employment history, (twenty-one years claimed of underground coal mining and chronic cough and sputum production), Dr. Sutherland did not feel the need to describe an objective impression of the severity of this impairment.

Conn was most recently examined by Dr. Allen L. Cornish in May of 1980. Dr. Cornish conducted a physical examination and an EKG, took a chest x-ray, and administered a spirogram and blood gas studies. Although Conn's spirometry tests yielded normal results, his blood gas studies revealed severe hypoxemia, an inconsistency for which Dr. Cornish could not account. Upon physical examination, Dr. Cornish found Conn to be slightly cyanotic and noted that his fingernails were of a "watch-glass" configuration. Dr. Cornish found no evidence of silicosis or other occupational disease.

In addition to the x-ray interpretations by examining doctors, several non-examining doctors either reread certain x-rays or took and interpreted additional x-rays. In December of 1975, Dr. Benjamin Felson, a "B" reader, reread the x-ray taken by Dr. Wright in September of 1975 and, like Dr. Wright, found no evidence of pneumoconiosis or other significant abnormality. Dr. G.N. Combs, also a "B" reader, interpreted an x-ray taken in 1975 and one taken in 1980 as showing no evidence of pneumoconiosis. Dr. Richard P. O'Neill and Dr. Eugene P. Pendergrass, a "B" reader, in 1975 and 1976 respectively, reread the 1975 x-ray initially interpreted by Dr. Martin, who found pneumoconiosis stage 1/1 q. Dr. O'Neill diagnosed pneumoconiosis; Dr. Pendergrass found possible manifestations of pneumoconiosis. In 1976, Dr. R.H. Morgan, a "B" reader, reread the 1975 x-ray initially interpreted by Dr. Clarke and found the film barely acceptable but com-

---

tional Safety and Health for reading pneumoconiosis on x-ray films.

2. An "A" reader has completed a less extensive examination than "B" readers sponsored by the Department of Health and Human Services.

pletely negative. Dr. R. Quillin, a "B" reader, interpreted a 1980 x-ray and discovered no evidence of pneumoconiosis or emphysema. Finally, in 1981, Dr. Brent Brandon, a "B" reader, reread the 1974 x-ray interpreted by Dr. Stumbo as showing pneumoconiosis stage 1/1 q and concluded that it exhibited nodular densities in the right upper lung zone consistent with pneumoconiosis stage 1/0 p.

The ALJ, in a decision and order issued March 31, 1982, determined first that Conn was a coal miner for ten and one-half years, last employed by White Deer Coal Company in 1975, when Conn ceased working. Because Conn had in excess of ten years of coal mine employment, the ALJ went on to consider whether Conn was entitled to the interim presumption of total disability due to pneumoconiosis arising out of coal mine employment pursuant to 20 C.F.R. § 727.203(a).

Under 20 C.F.R. § 727.203(a)(1), the interim presumption is invoked if a chest x-ray establishes the existence of pneumoconiosis. The ALJ weighed and evaluated the conflicting x-ray reports. Of the thirteen x-ray readings, eight found some degree of pneumoconiosis, but only two of these were by "B" readers. The five negative reports were all by "B" readers, and included interpretations of the most recent x-rays taken in 1980. The ALJ concluded that as a whole, giving greater weight to the latest interpretations of the most recent x-rays and to those by "B" readers, the evidence failed to entitle Conn to the presumption under 20 C.F.R. § 727.203(a)(1).

Title 20 C.F.R. § 727.203(a)(2) provides that the presumption is invoked if ventilatory (pulmonary) studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values which are equal to or less than certain specified values. The record indicates that pulmonary function studies were conducted by Drs. Stumbo, Anderson, Wright, Clarke,

Sutherland, and Cornish. In his discussion of § 727.203(a)(2), the ALJ mentions only four of these studies: those by Drs. Stumbo, Clark, Sutherland, and Cornish. Of those four reports, only Dr. Stumbo's yielded qualifying values; however, no tracings or statement of effort were attached as required by 20 C.F.R. § 410.430. Therefore, the ALJ found that the presumption was not invoked under 20 C.F.R. § 727.203(a)(2).

Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values equal to or less than certain specified values invoke the presumption under § 727.203(a)(3). Of the four studies performed in this case, two by Dr. Sutherland, one by Dr. Cornish, and one by Dr. Wright, only the results of Dr. Cornish's test were qualifying. The ALJ found that this single test entitled Conn to the presumption of totally disabling pneumoconiosis arising out of coal mine employment under (a)(3). *Mullins* casts considerable doubt on this finding based on a single opinion.[3]

Finally, the ALJ considered whether Conn was entitled to the presumption under 20 C.F.R. § 727.203(a)(4), which provides for invocation of the presumption if other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment. The record included seven medical opinions potentially satisfying this requirement. Dr. Stumbo's report was discredited by the ALJ because his final opinion bore on Conn's employability rather than functional impairment. Dr. Wright's opinion did not satisfy the requirement because he found only "mild" airway disease and no pneumoconiosis. Dr. Martin's report and deposition were considered insufficient to invoke the presumption because his opinions were merely affirmative responses to leading questions and were unsupported by details or doc-

---

**3.** In *Mullins,* the Court held that a claimant must establish at least one of the qualifying facts for invocation of the § 727.203(a) presumption by a preponderance of the evidence, and that a single item of qualifying evidence will not always satisfy that burden. *See* 108 S.Ct. at 437–38.

umented testing going to the extent of impairment. Dr. Clarke's opinion that Conn was permanently and totally disabled from all work in a dusty environment, the ALJ concluded, established vocational disability *but not Conn's degree of functional impairment.* Although Dr. Sutherland found, primarily based on Conn's own recitation of his medical history, that Conn suffered chronic cough and sputum production, he offered no opinion regarding the severity of the condition. Dr. Cornish, of course, found no evidence of silicosis or other occupational disease. However, the ALJ found that Dr. Anderson's report, including a history, physical, chest x-ray, and pulmonary function studies, was sufficiently reasoned and documented to entitle Conn to the presumption under 20 C.F.R. § 727.203(a)(4). This decision invoking the (a)(4) presumption was based primarily on the Anderson opinion.

The ALJ next considered whether the presumption invoked pursuant to 20 C.F.R. § 727.203(a)(3) and (4) had been rebutted. 20 C.F.R. § 727.203(b) provides for four methods of accomplishing rebuttal.[4] Because Conn had not been employed since 1975, rebuttal was not available under 20 C.F.R. § 727.203(b)(1). Further, there was no evidence in the record that Conn suffered from an impairment unrelated to coal dust exposure. Therefore, 20 C.F.R. § 727.203(b)(3) was not satisfied.

The ALJ concluded, however, that rebuttal was effectuated under both 20 C.F.R. § 727.203(b)(2) and 20 C.F.R. § 727.203(b)(4). Although the ALJ determined that the reports of Drs. Wright, Cornish, and Sutherland indicated the presence of a ventilatory impairment, he concluded that the impairment was, at most, mild, and that Conn was able to return to

his usual coal mine work. The ALJ discredited the opinions of Drs. Martin, Anderson, and Clarke because they were "blanket statements" based largely on x-ray evidence not indicative of the extent of impairment, noting that while Dr. Anderson's opinion was also based on pulmonary function studies results, those results had not been credited. He also discounted these doctors' conclusions that Conn should not return to the mines because they expressed no opinion about the extent of the functional disability Conn suffered. Dr. Stumbo's opinion was discounted, as it was for purposes of § 727.203(a)(4), because it was in vocational rather than functional terms. The ALJ noted that Dr. Sutherland's report did not show any abnormality exhibited by Conn, other than shortness of breath after climbing stairs. He again noted that Sutherland's report of disability failed to describe how the disability was caused by the diagnosed chronic cough and sputum production, and also noted that the report was not the result of a full and thorough testing.

The ALJ found the reports of Drs. Wright and Cornish to be persuasive. Dr. Wright concluded that the pulmonary function studies showed "mild" obstructive airway disease, and for the same reason that this opinion dictated against invocation of the presumption under § 727.203(a)(4), the ALJ concluded that it weighed heavily in favor of § 727.203(b)(2) rebuttal. The ALJ noted Dr. Wright's brief mention that a blood gas study showed mild hypoxemia at rest but normal exercise values, indicating a ventilatory reserve. Although this blood gas study did not meet quality standards because specific results were not reported and therefore was not considered for purposes of § 727.203(a)(3), the ALJ concluded

---

**4.** 20 C.F.R. § 727.203(b) provides:

*Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

that it was relevant for purposes of rebuttal. Further, the ALJ concluded that the results of the single blood gas study showing severe hypoxemia reported by Dr. Cornish were outweighed by Dr. Wright's blood gas study results when considered in conjunction with the normal results obtained by Dr. Sutherland, despite the use of the Cornish blood gas study to invoke the presumption. The ALJ also relied heavily on Dr. Cornish's conclusion that there was no evidence of silicosis or other occupational disease in finding Conn not totally disabled. He suggested, as did Dr. Cornish, that the severe hypoxemia finding was an aberration in light of Conn's normal spirometry and the normal blood gas study results obtained by Dr. Sutherland only three months before. In addition to the reports of Drs. Wright and Cornish and the normal blood gas study results, the ALJ relied on the normal pulmonary function studies reports.

The ALJ also found rebuttal accomplished pursuant to 20 C.F.R. § 727.203(b)(4), concluding that the evidence established that Conn did not have pneumoconiosis. The ALJ again relied on the reports of Drs. Wright and Cornish, discrediting the diagnoses of Drs. Martin, Clarke, Anderson, and Stumbo because they were based on x-ray evidence that had been discounted. The ALJ also considered whether Dr. Sutherland's diagnosis was the equivalent of a finding of pneumoconiosis under 20 C.F.R. § 727.202, which defines pneumoconiosis as a chronic dust disease of the lung arising out of coal mine employment. Noting that Dr. Sutherland's conclusion was predicated on a purported twenty-one year history of coal mining, far in excess of Conn's actual experience, and really described a symptom rather than a condition or disease, the ALJ concluded that Dr. Sutherland's diagnosis did not alter his belief that the opinions of Drs. Cornish and Wright, together with the negative x-ray evidence, established that Conn did not suffer from pneumoconiosis.

The ALJ also reviewed Conn's claim under the applicable regulations of 20 C.F.R. Part 410 and concluded that Conn was not entitled to benefits. The ALJ therefore denied Conn's claim for benefits.

Conn sought and obtained review by the Benefits Review Board (BRB) of the ALJ's decision denying benefits. The BRB affirmed the ALJ's finding of § 727.203(b)(2) rebuttal. Conn appeals the BRB's affirmance of the ALJ.

### III.

Conn argues that for a finding of § 727.203(b)(2) rebuttal to be upheld, the evidence must not only establish the lack of a totally disabling pulmonary impairment, but must also affirmatively establish that Conn was able to return to his usual coal mine work, which no doctor affirmatively opined. Conn relies upon *York v. Benefits Review Board,* 819 F.2d 134 (6th Cir.1987), and *Roberts v. Benefits Review Board,* 822 F.2d 636 (6th Cir.1987).

We believe *York* and *Roberts* to be inapposite. In those cases, the miner suffered from a disability other than or in addition to a lung impairment. The issue in each was whether the respiratory impairment was a contributing cause of the miner's total disability under § 727.203(b)(3). A finding that the miner was not *totally* disabled by *pneumoconiosis* was therefore insufficient to support § 727.203(b)(2) rebuttal determination that the miner could perform his usual coal mine work or comparable and gainful work.

In the instant case, there is no evidence in the record that Conn suffers from any disability other than that caused by his ventilatory impairments. We are troubled by the absence of affirmative medical authority to indicate Conn's continuing capacity to work in a coal mine environment or its equivalent. Because we affirm the ALJ's determination based upon the (b)(4) rebuttal, we find it unnecessary to decide whether his (b)(2) rebuttal finding was supported by substantial evidence.

The ALJ considered the medical opinions of seven physicians together with the x-ray evidence of record in concluding that the evidence established that Conn did not have pneumoconiosis. His consideration of the evidence for rebuttal purposes incorporated

his weighing of the x-ray evidence under § 727.203(a)(1). The ALJ discredited the diagnoses of pneumoconiosis by Drs. Martin, Clarke, Anderson, and Stumbo because their x-ray findings, upon which the diagnoses were based, were discredited at the invocation stage. Conn contends that the ALJ weighed only quantity and not the quality of the x-ray evidence, failed to weigh conflicting interpretations of the same x-ray, and erroneously failed to accord deference to the examining physicians who diagnosed pneumoconiosis. He also claims that the ALJ failed to give any weight to non-"B" reader x-ray evidence.

Upon a careful review of the ALJ's decision we conclude that Conn's contentions are without merit in this respect. This is not a case wherein there was reliance upon one negative x-ray reading by a non-examining physician to rebut positive x-ray evidence furnished by qualified examining physicians, as prescribed by 30 U.S.C. § 923(b) and by this court in *Dickson v. Califano*, 590 F.2d 616 (6th Cir.1978), and *Sexton v. Director*, 752 F.2d 213 (6th Cir. 1986).

Rather, the ALJ considered a number of x-ray readings, and gave more weight to those by "B" readers, the majority of which were negative, and to interpretations of most recent x-rays, both of which were negative. He also credited the findings of Dr. Wright and Dr. Cornish, both examining physicians, that Conn did not have pneumoconiosis. The ALJ's method of evaluating the x-ray evidence for § 727.203(b)(4) rebuttal was upheld in *Orange v. Island Creek Coal Co.*, 786 F.2d 724 (6th Cir.1986). Further, the ALJ's method of weighing the x-ray evidence is supported by our reading of *Mullins*. Our scope of review on the question of whether the ALJ reached the right conclusion after weighing the evidence is "exceedingly narrow. Absent an error of law, findings of fact and conclusions flowing therefrom must be affirmed if supported by substantial evidence." *Riley v. National Mines Corp.*, 852 F.2d 197, 198 (6th Cir.1988). Although we do not affirm the basis used by the BRB, we conclude that the ALJ's

(b)(4) rebuttal finding is supported by substantial evidence.

The decision of the Department is accordingly AFFIRMED.