888 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles McCOY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKER'S COMPENSATION, DEPT. Of LABOR, Respondent.
 No. 88-3926.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1989.
 
 Before KEITH and WELLFORD, Circuit Judges, and HORACE W. GILMORE*, District Judge.
 PER CURIAM:
 
 
 1
 In this black lung appeal, the petitioner alleges that he began coal mining in 1921 at the age of 16, working two years for a company the name of which he could not remember. He next worked in the "General Refactory" coal mines for nine years. From 1933 to 1937 he worked for "White" (or Wyatt) Coal Company and then left the industry on the advice of a physician. (There is some dispute as to the name of this coal company. McCoy stated on his application for benefits that he was employed from 1933 to 1937 for the "Wyatt" Coal Company.) McCoy's entire career was spent loading coal in underground mines. After leaving the mines, McCoy ran a general store with his wife.
 
 
 2
 The record contains three affidavits from co-workers of McCoy attesting to his coal mine employment. Leonard Adkins stated that he worked with McCoy at the General Refactory Company coal mine from 1926 until 1932. Craig Tussey stated that McCoy and he worked at the "ConColidated [sic] Coal Co. ... from about 1924 to 1926," at the General Refactory Company, and at the "Wyate [sic] Coal Co. ... for about three years and six months" for "a total of about five years and six months." Bob Riser stated that McCoy worked at the Wyatt Coal Company mines in the year 1933.
 
 
 3
 An unsigned statement indicates that McCoy worked for Rush Coal Company from 1919 to 1922, for Consolidated Coal Company from 1925 to 1933 and for Wyatt Coal Company from 1933 to 1937.
 
 
 4
 The record also contains x-ray interpretations, ventilatory and arterial blood gas tests, and the medical opinions of several physicians. The x-ray results, taken from 1972 to 1986, all were essentially negative.
 
 
 5
 The petitioner was examined by Dr. Shufflebarger on January 5, 1973. McCoy complained of a productive cough that he allegedly had suffered from for thirty-six years. The doctor noted coarse rales and rhonchi in both lungs. Dr. Shufflebarger diagnosed chronic bronchitis and concluded that McCoy was unable to work in coal mines due to his pulmonary disease.
 
 
 6
 McCoy was hospitalized in January 1974 for removal of a nonfunctioning left kidney. A general physical examination was "unremarkable." A post-operative arterial blood study was characterized as "unremarkable ... showing only mild hypoxemia and metabolic acidosis." McCoy suffered a "20% pneumothorax" after the surgery, which apparently resolved itself spontaneously.[1]
 
 
 7
 On May 13, 1976, McCoy was hospitalized after suffering a myocardial infarction. He subsequently returned to work in his general store where he apparently was "at full activity, jogging, working, lifting and carrying, and has not had problems with pain, fatigue, dyspnea, etc."
 
 
 8
 Dr. Lee Jackson examined McCoy on May 19, 1986. McCoy's chest, lungs, and extremeties were normal on physical examination. Arterial blood gas studies produced normal results, and ventilatory studies indicated only a mild impairment due to obstructive airway disease. An x-ray was negative for pneumoconiosis. Dr. Jackson concluded that McCoy had no pulmonary disease related to coal mine employment and that he retained the respiratory capacity to perform the work of a coal miner, notwithstanding the diagnosis of a mild pulmonary impairment.
 
 Procedural History
 
 9
 An Administrative Law Judge (ALJ) found the testimony of McCoy and the affidavits of Riser, Tussey, and Adkins concerning McCoy's coal mine employment to be too vague, general, and inspecific to be given significant weight. The ALJ therefore concluded that McCoy had established some, but less than ten, years of coal mine employment. The ALJ next evaluated the merits of the claim under 20 C.F.R. Part 410. He determined that the chest x-ray evidence was negative for pneumoconiosis, that the ventilatory and arterial blood gas studies did not establish total respiratory or pulmonary disability, and that the medical opinion evidence failed to establish a totally disabling respiratory or pulmonary impairment arising out of coal mine employment, 20 C.F.R. 410.414(a), 410.424, 410.426(b) and Appendix to Subpart D, and accordingly denied the petitioner's application for benefits.
 
 1. Employment History
 
 10
 We believe the ALJ erred in rejecting completely McCoy's testimony and his co-workers' affidavits establishing that McCoy had worked in the coal mines for more than ten years. Considering the remoteness in time of the employment, it was unreasonable for the ALJ to reject the petitioner's evidence with virtually no articulated reasons. The Administrative Procedure Act, 5 U.S.C. Sec. 557(c)(3)(A), and the Secretary's regulations, 20 C.F.R. Sec. 725.477(b), require the ALJ to make specific findings with respect to the number of years of coal mine employment. The ALJ in this case made no specific findings concerning the exact number of years of coal mine employment. Rather, he merely stated that McCoy had "some coal mine employment" and that he had not met his burden of proving ten years coal mine employment.
 
 
 11
 McCoy claims that he began coal mine work at age 16 and worked two years for a company the name of which he could not remember, two years for the Consolidation Coal Company, nine years for General Refactory Coal Company, and about four years for "White" (Wyatt) Coal Company from 1933 to November 1937. The ALJ's finding that McCoy's only clear recollection was of his employment with Wyatt is plainly incorrect.
 
 
 12
 The burden is on McCoy to establish the length of his coal mine employment. Trusty v. Director, OWCP, 709 F.2d 1059 (6th Cir.1983). The ALJ is not required to accept even uncontradicted evidence of coal mine employment. Wenanski v. Director, OWCP, 8 BLR 1-487, 1-489 (1986); Riley v. National Mines Corp., 852 F.2d 197, 198 (6th Cir.1988). However, considering the fairly specific nature of the affidavits, which apparently corroborate McCoy's own hearing testimony, the ALJ's rejection of those exhibits as "vague" and "unspecific" may be unwarranted. The ALJ did not make any more specific findings of his own, but simply stated that McCoy had established "some coal mine employment." As the Director points out in its brief, the ALJ's imprecise finding is essentially unreviewable by this court since it is impossible to determine what evidence the ALJ credited and what evidence he rejected.
 
 
 13
 The Director argues that the ALJ's finding of less than ten years of coal mine employment must be vacated and the case remanded, and we agree. The evidence in the record, if fully credited, would establish over ten years of coal mine employment, entitling McCoy to consideration under the 20 C.F.R. Part 727 interim presumption. See Mullins Coal Co. v. Director, OWCP, 108 S.Ct. 427 (1987). As the Director also concedes, the record contains evidence that, if credited, would be sufficient to establish invocation of the presumption. For example, the medical opinion of Dr. Shufflebarger, who apparently diagnosed total disability due to chronic bronchitis, is sufficient to establish invocation under 20 C.F.R. 727.203(a)(4), which requires medical opinion evidence establishing totally disabling respiratory or pulmonary impairment. Conn v. White Deer Coal Co., 862 F.2d 591. Accordingly, we believe the denial of benefits and the finding of less than ten years of coal mine employment must be vacated and the case remanded to the ALJ for further consideration of the employment history evidence.
 
 2. Part 410 Criteria
 
 14
 The finding of the ALJ that the record evidence is insufficient to establish McCoy's burden of proof under the Part 410 criteria, without the benefit of any presumptions, is supported by substantial evidence and should be affirmed. McCoy asserts the medical evidence establishes that he is unable to work because of lung disease. The petitioner relies on the chest x-ray reports of Drs. Batts and Stalling, as well as the medical opinions of Drs. Shufflebarger, Cole, and Jackson. The ALJ could have properly determined that this evidence was legally insufficient to establish entitlement under the 20 C.F.R. Part 410 regulations in the absence of any available presumption.
 
 
 15
 A claimant who cannot establish entitlement under the 20 C.F.R. Part 727 interim presumption in a claim filed before, but adjudicated after March 31, 1980, must have his claim considered under the Part 410 criteria. Director, OWCP v. Forester, 857 F.2d 1121. In order to establish entitlement under the Part 410 criteria, the claimant must demonstrate that he has pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that the pneumoconiosis is totally disabling. Miniard v. Califano, 618 F.2d 405, 406 (6th Cir.1980). The evidence in this case falls far short of establishing any of these three elements.
 
 
 16
 Dr. Batts' x-ray diagnosis of chronic pleural thickening and Dr. Stalling's finding of "RML Process or Fat Pad" do not constitute diagnoses of pneumoconiosis. Clinical pneumoconiosis exists in two forms, simple and complicated. In order to establish clinical pneumoconiosis by chest x-ray, the film must be classified according to an accepted classification system as either Category 1, 2, or 3 simple pneumoconiosis, or A, B, or C complicated pneumoconiosis. 20 C.F.R. 410.428(a). Dr. Batts and Dr. Stalling did not diagnose pneumoconiosis in accordance with the regulation's requirements, and their reports are therefore legally insufficient to establish the existence of pneumoconiosis. All of the other chest x-ray evidence is uniformally negative. Because the chest x-ray evidence fails to establish the existence of pneumoconiosis, the presumption at 20 C.F.R. 410.490(b) is unavailable to McCoy. Pittston Coal Group v. Sebben, 109 S.Ct. 414 (1988). The ALJ's conclusion that pneumoconiosis had not been established pursuant to the Part 410 criteria was proper.
 
 
 17
 The medical opinions of Drs. Cole, Shufflebarger, and Jackson similarly fail to establish the existence of a totally disabling respiratory or pulmonary impairment arising out of coal mine employment. Dr. Cole only treated McCoy for left kidney failure and made no findings concerning chronic pulmonary disease or impairment. Although Dr. Shufflebarger diagnosed chronic bronchitis and indicated that McCoy was unable to return to his coal mine work, the doctor's failure to discuss the genesis of McCoy's lung condition would allow the ALJ to find this report legally insufficient to establish the petitioner's burden of proof under the 20 C.F.R. Part 410 criteria. Finally, Dr. Jackson concluded that McCoy did not have a pulmonary disease related to coal mine employment and that he retained the respiratory capacity to perform the work of a coal miner, notwithstanding the presence of a mild pulmonary condition.
 
 
 18
 For the foregoing reasons, the ALJ's decision that McCoy failed to establish disability under Part 410 is AFFIRMED. The ALJ's order rejecting petitioner's employment history evidence is VACATED and the case REMANDED for a determination of the length of McCoy's coal mine employment. If upon reconsideration the petitioner is found to have worked in the mines ten years or more, the ALJ should determine entitlement under the Part 727 interim presumption.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 A pneumothorax is "an accumulation of air or gas in the pleural space." Dorland's Illustrated Medical Dictionary, 1223 (25th ed. 1974)