893 F.2d 1335
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Otto MESSER, Petitioner-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent-Appellee.
 No. 89-3355.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1990.
 
 Before KEITH and KENNEDY, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner, Otto Messer ("Messer") appeals from the decision and order of the Benefits Review Board ("the Board") denying his claim under the Black Lung Act, as amended, 30 U.S.C. Secs. 901-945 ("the Act"). For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On December 9, 1975, Messer filed a claim for black lung disability benefits.[1] After his claim was administratively denied by the Department of Labor, Messer requested a formal hearing before an administrative law judge ("ALJ").
 
 
 3
 The ALJ heard Messer's case on March 20, 1985. On April 9, 1985, the ALJ issued a decision and order ("Decision and Order") denying benefits. In denying benefits, the ALJ found that Messer had been engaged in no more than six and three-quarter years of coal mine employment;[2] Since Messer's total coal mine employment was less than ten years, ten years being the required length of employment for invoking the interim presumption under 20 C.F.R. Sec. 727.203, the ALJ adjudicated Messer's claim under 20 C.F.R. Sec. 410.414.[3] After examining Messer's medical records, the ALJ found that the evidence was insufficient to establish pneumoconiosis under 20 C.F.R. Sec. 410.414(a) because the preponderance of the chest X-ray interpretations were negative for pneumoconiosis.
 
 
 4
 The ALJ considered whether pneumoconiosis was demonstrated by other relevant medical evidence[4] of record, pursuant to 20 C.F.R. Sec. 410.414(c). Dr. W.F. Clarke examined Messer on October 1, 1984, and conducted a series of tests.[5] Based on these test results, and Messer's history and physical examination, Dr. Clarke concluded that Messer was totally and permanently disabled from all manual labor due to pneumoconiosis. Dr. Harold L. Bushey first examined Messer on November 23, 1970, and diagnosed him as having chronic lung disease with pulmonary emphysema and fibrosis compatible with silicosis, Grade II. Dr. Bushey examined Messer again on three subsequent occasions: June 19, 1973, July 9, 1976, and December 9, 1980. In his reports of the last three examinations, Dr. Bushey concluded that Messer was totally and permanently disabled due to coal miners' pneumoconiosis.
 
 
 5
 Although there are several other physicians' opinions in the record, none reflect that Messer is totally disabled due to respiratory impairment. After reviewing the medical opinions of record, the ALJ discredited Dr. Clarke's and Dr. Bushey's diagnoses of totally disabling coal miners' pneumoconiosis. The ALJ discredited Dr. Clarke's opinion for two reasons: (1) his opinion was based on a positive chest X-ray which was reread as negative, therefore it detracted from the physician's conclusion regarding any alleged respiratory impairment; (2) the ventilatory study which Dr. Clarke relied upon was suspect because another study, conducted a few days later, produced higher normal values.
 
 
 6
 The ALJ also found that Dr. Bushey's opinion was unreliable because the results of the ventilatory studies conducted in 1973 and 1976 were significantly exceeded by the results of the later 1980 study conducted by Dr. Bushey. Therefore, Dr. Bushey's diagnosis based on the earlier studies were found to be suspect. Furthermore, Dr. Bushey failed to explain how the 1980 studies supported his diagnosis of Messer having a totally disabling respiratory impairment.
 
 
 7
 The ALJ also determined that even though the record contains about a dozen positive X-ray readings, this evidence was outweighed by negative readings in the record. The record contains 15 readings by five different B-readers[6] of X-rays taken from 1970 to 1984. Each of the B-readings was negative for pneumoconiosis. Since the B-readers have demonstrated their expertise in this area, the ALJ found that their uniformly negative interpretations of the X-rays foreclosed a finding of pneumoconiosis. The ALJ further concluded that the remaining physicians' opinions did not address Messer's degree of respiratory impairment; therefore Messer failed to establish, by a preponderance of the evidence, that he was disabled due to pneumoconiosis pursuant to 20 C.F.R. Sec. 410.414(c).
 
 
 8
 The ALJ also considered whether Messer could invoke the entitlement presumption under 20 C.F.R. Sec. 410.490(b).[7] The ALJ determined that since the earliest X-ray reading was negative, he would weigh all of the X-ray evidence in deciding whether the section 410.490 presumption was invoked. See Couch v. Secretary of Health & Human Services, 774 F.2d 163, 166-67 (6th Cir.1985); Haywood v. Secretary of Health & Human Services, 699 F.2d 277, 283 (6th Cir.1983). Since he had previously determined that the preponderance of the probative X-ray evidence was negative for pneumoconiosis, the ALJ held that the presumption was not invoked. Thus he denied Messer's claim for benefits.
 
 
 9
 In an unpublished decision and order ("Board's Decision and Order") dated November 30, 1988, the Board affirmed the ALJ's decision denying Messer's claim for benefits. The Board found that the ALJ acted within his discretion in discrediting Dr. Clarke's opinion because it was not adequately supported by underlying documentation. Furthermore, the Board determined that Messer had not established entitlement under section 410.490, as the ALJ found that the preponderance of the X-ray evidence was negative and Messer failed to challenge this finding on appeal.[8]
 
 
 10
 On April 26, 1989, Messer petitioned this court for review of the Board's decision.
 
 II.
 
 11
 In Welch v. Benefits Review Bd., 808 F.2d 443 (6th Cir.1986), we stated that:
 
 
 12
 This court has a limited scope of review over the decision of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of that administrative law judge's factual determinations. Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1116 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 13
 Welch, 808 F.2d at 445. Therefore, our review in this case is limited to examining the ALJ's decision to determine whether it is consistent with the Act and "supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3). See Wardman v. Pittsburg & Midway Coal Min. Co., 839 F.2d 257, 258 (6th Cir.1988).
 
 
 14
 The purpose of the Black Lung Benefits Act is to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. Sec. 901(a). Under the Act, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. Sec. 902(b). A miner is deemed totally disabled when "pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine." 30 U.S.C. Sec. 902(f)(1)(A).
 
 
 15
 If a miner has engaged in coal mine employment for at least ten years and meets one or more of the Part 727 medical requirements, then "he will be presumed to be totally disabled due to pneumoconiosis." 20 C.F.R. Sec. 727.203(a). If a miner cannot sustain the presumption of total disability under Part 727, then he must affirmatively prove that he is totally disabled under Part 410 and his disability results from pneumoconiosis. See 20 C.F.R. Sec. 410.414; Martin v. Alabama By-Products Corp., 864 F.2d 1555, 1557 (11th Cir.1989).
 
 III.
 
 16
 Relying on Couch v. Secretary of Health & Human Services, 774 F.2d 163 (6th Cir.1985), Messer contends that he is entitled to invoke the section 410.490 presumption because the first chest X-ray reading of record was positive for pneumoconiosis. Therefore, under Couch, the existence of pneumoconiosis has been established.
 
 
 17
 In Couch, we held that "when positive readings are contradicted by prior negative X-rays, there is substantial evidence to support a finding by the Secretary that the evidence is in conflict and the Secretary may have the positive X-rays reread in order to determine whether a claimant is disabled due to pneumoconiosis." Id. at 168.[9] In making his argument, however, Messer fails to address our more recent analysis in Riley v. National Mines Corp., 852 F.2d 197 (6th Cir.1988) where we held that an administrative law judge "may weigh conflicting and competing evidence in deciding whether a claimant has carried his presumption invocation burden." Id. at 199. In that case, petitioner argued that a single item of qualifying evidence invoked the presumption under section 410.490. Our holding in Riley was based on the Supreme Court's decision in Mullins Coal Co. v. Director, OWPC, 484 U.S. 135 (1987) which held that the section 410.490 presumption was invoked by a preponderance of the evidence. Id. at 159.
 
 
 18
 Thus, the position we maintained in Couch is no longer the law in our circuit. Instead, the ALJ should weigh conflicting and competing evidence and determine, from a preponderance of the X-ray evidence, whether the claimant has carried his presumption invocation burden. Riley, 852 F.2d at 199.
 
 
 19
 In the present case, the ALJ refused to invoke the presumption because the preponderance of the chest X-ray evidence was negative for pneumoconiosis. Messer did not challenge the ALJ's finding that the X-ray evidence is insufficient under section 410.414, either before the Board or this court. Therefore we affirm this finding. See, e.g., Cox v. Benefits Review Board, 791 F.2d 445, 447 (6th Cir.1986) (court refused to review merits of ALJ's decision where petitioner failed to present argument to the Board); Blevins v. Director, OWPC, 683 F.2d 139, 143 (6th Cir.1982) (court should not consider arguments not raised in agency proceeding under doctrine of exhaustion of administrative remedies). Messer merely contends, without raising any issue and relying mistakenly on Couch, that there is insufficient evidence to rebut the 410.490 presumption.
 
 
 20
 Nevertheless, even if this issue was properly before this court, the ALJ correctly refused to invoke the presumption because he properly found that the preponderance of the chest X-ray evidence was negative for pneumoconiosis. In fact, in weighing the X-ray evidence, the ALJ correctly chose to credit the overwhelming evidence of negative readings rendered by the more qualified B-Readers. See Johnson v. Island Creek Coal Co., 846 F.2d 364, 366 (6th Cir.1988) (ALJ is free to assign more weight to a B-reader's interpretation based on his or her demonstrated expertise in evaluating X-rays for the existence of pneumoconiosis); Conn v. White Deer Coal Co., 862 F.2d 591, 597 (6th Cir.1988) (affirming ALJ's crediting of B-readers' interpretations). Therefore, the ALJ's evaluation of the X-ray evidence, and his finding that Messer failed to invoke the section 410.490 presumption, is supported by substantial evidence.
 
 IV.
 
 21
 Messer also argues that the ALJ erred in discrediting Dr. Clarke's and Dr. Bushey's diagnoses of totally disabling pneumoconiosis. As discussed earlier, our review is statutorily confined to "scrutiniz[ing] Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983). Therefore, we must uphold the administrative law judge's determination if it is adequately supported by the evidence and not inconsistent with the applicable law. Engle v. Director, OWCP, 792 F.2d 63, 64 (6th Cir.1986); Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985).
 
 
 22
 Here, the ALJ acted within his discretion in discrediting the only medical reports supporting a total disability finding. In discrediting Dr. Clarke's opinion, the ALJ noted that the X-ray which the physician relied upon was reread by Dr. Cole, a B-reader, as negative. Because the X-ray played an important role in Dr. Clarke's analysis, the ALJ concluded that Dr. Cole's finding severely detracted from the reliability of Dr. Clarke's diagnosis, as well as other underlying documentation. Decision and Order at 4; Board's Decision and Order at 2. Therefore, the ALJ found that the studies conducted by Dr. Clarke were not entitled to any weight. Id.
 
 
 23
 In discrediting Dr. Bushey's opinion, the ALJ noted that Dr. Bushey conducted ventilatory function studies in 1973, 1976 and 1980--the studies conducted in 1980 produced results common for an individual with a normal ventilatory reading. After reviewing these studies, the ALJ concluded:
 
 
 24
 Thus, to the extent that he [Dr. Bushey] relied on the ventilatory studies he conducted in reaching his conclusions of disability in 1973 and 1976, his conclusions are not credible. In regard to his 1980 report, his failure to change his earlier diagnosis or in any way explain his conclusions of disability in light of the much higher, apparently normal ventilatory study results he obtained in 1980 renders his opinion invalid.
 
 
 25
 Decision and Opinion at 5. Therefore, in both instances, the ALJ provided rational reasons for rejecting the reports.
 
 
 26
 Messer argues that the ALJ exceeded his scope in discrediting Dr. Clarke's and Dr. Bushey's opinions by looking at the their underlying documentation. Yet, the ALJ is required to consider, at a minimum, the physician's underlying documentation and whether it supports his ultimate conclusion. Director, OWPC v. Rowe, 710 F.2d 251, 255 (6th Cir.1983) ("the mere fact that an opinion is asserted to be based upon medical studies cannot by itself establish as a matter of law that it is documented and reasoned. Rather, that determination requires the factfinder to examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based.").
 
 
 27
 The ALJ in the present case, was evaluating the validity of the physicians' underlying documentation as required under Rowe. He logically deduced that Dr. Clarke's ventilatory study results were suspect given the fact that a mere ten days after Dr. Clarke's study, when Dr. Baker conducted his own study, Messer's ventilatory study results had dramatically increased. The improvement in the study conducted by Dr. Baker indicates that when Dr. Clarke performed his study, either Messer was suffering from an acute rather than a chronic condition or the earlier studies were not performed properly. Since Dr. Clarke's underlying documentation was suspect, the ALJ correctly discredited his total disability diagnosis.
 
 
 28
 The ALJ also correctly discredited Dr. Bushey's opinion. The mere fact that Messer's 1980 ventilatory study showed a dramatic improvement over those conducted by Dr. Bushey in 1973 and 1976, cast significant doubt on the validity of Dr. Bushey's diagnosis. See Phillips v. Director, OWPC, 768 F.2d 982, 984-85 (8th Cir.1985) (clinical studies showing an improvement in respiratory condition can cast doubt on the documentary support for a physician's disability assessment). Moreover, the ALJ properly discredited Dr. Bushey's opinion because Dr. Bushey failed to explain his total disability diagnosis given the improved, normal ventilatory studies he obtained in 1980. Id.
 
 V.
 
 29
 We find that Messer failed to establish his entitlement to benefits as the preponderance of the chest X-ray evidence was negative for pneumoconiosis and the only medical opinions diagnosing a totally disabling respiratory impairment arising out of coal mine employment were correctly discredited by the ALJ.[10] Accordingly, we conclude that the Board correctly affirmed the decision of the ALJ denying black lung benefits to Messer. The decision and order of the Board is AFFIRMED.
 
 
 
 [1]
 Messer had filed an earlier claim on July 23, 1970 with the Social Security Administration ("SSA"), pursuant to Part B of the Act, which was denied on December 16, 1970. The denial was affirmed on July 17, 1974 and subsequently, Messer chose to have his 1970 claim reviewed by the SSA on April 4, 1978. Under 30 U.S.C. Sec. 945(a)(2)(B)(i) his claim was referred to the Department of Labor
 
 
 [2]
 Messer's Social Security earnings records show that he was employed with four different coal companies beginning in the last quarter of 1960 and ending in the third quarter of 1968. These records indicate that Messer's first coal mine employment was with Kentucky Sun which began in late 1960 and ended in early 1961. No other coal mine earnings are listed until late 1962 when Messer worked steadily as a miner for Shamrock, Gault and Goose Valley Coal Companies until July or August of 1968. The parties were unable to stipulate to the length of Messer's coal mine employment. Therefore, after reviewing the evidence, the ALJ determined that Messer had been engaged in no more than six and three-quarter years of coal employment
 
 
 [3]
 20 C.F.R. Sec. 410.414 provides:
 (a) General. A finding of the existence of pneumoconiosis ... [may be made by]:
 (1) Chest roentgenogram (X-ray); or
 (2) Biopsy; or
 (3) Autopsy.
 (b) Presumption relating to respiratory or pulmonary impairment.... [I]f other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment ..., it may be presumed, in the absence of evidence to the contrary ..., that a miner is totally disabled due to pneumoconiosis....
 * * *
 (3) The provisions of this paragraph shall apply where a miner was employed 15 or more years in one or more of the Nation's underground [or substantially similar] coal mines....
 (c) Other relevant evidence. ... [A] finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history....
 
 
 [4]
 The medical evidence consisted of chest X-rays, ventilatory studies, blood gas studies and eight medical reports
 
 
 [5]
 Dr. Clarke had Messer undergo: an X-ray which he interpreted as showing category 1/2 pneumoconiosis; ventilatory studies which he reported revealed moderate restrictive and obstructive pulmonary disease, and; and electrocardiogram which was normal
 
 
 [6]
 B-readers are radiologists who have demonstrated their proficiency in classifying X-ray evidence of pneumoconiosis by successfully completing an examination conducted by or on behalf of the Department of Health & Human Services. See Mullins Coal Co., Inc. v. Director, OWPC, 484 U.S. 135, 145 n. 16. (1987); Consolidation Coal Co. v. Chubb, 741 F.2d 968, 971 n. 2 (7th Cir.1984); 42 C.F.R. Sec. 37.51
 
 
 [7]
 Section 410.490(b) allows a rebuttable presumption of disabling pneumoconiosis where the claimant demonstrates the existence of pneumoconiosis by a preponderance of the chest X-ray, biopsy or autopsy evidence and the demonstrated pneumoconiosis arose out of the miner's coal mine employment
 
 
 [8]
 Messer filed a timely motion for reconsideration which the Board denied on March 30, 1989
 
 
 [9]
 In his brief, Messer misstates the holding in Couch as "if the first X-ray reading of record was read as positive by a certified reader, then the existence of pneumoconiosis has been established under Part 410." Brief of Petitioner, filed June 8, 1989, at 12. Certainly, this was not our holding given the cited text
 
 
 [10]
 Messer argues that the ALJ erred in not considering his claim under 20 C.F.R. Part 718. We need not address this issue, as Messer had failed to establish his entitlement to benefits under either Part 410 or the Part 718 criteria